UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY TARSHA,<br><br>                    Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC SYSTEMS, INC.; LANDSAFE, INC.; RICARDO RODRIGUEZ, an individual; and DOES 1-100 inclusive,<br><br>                    Defendants. | CASE NO: 11-CV-928 W (MDD)<br><br>**ORDER (1) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [DOC. 25-2]; AND (2) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DOC. 25]** |

Pending before the Court is Defendants Bank of America, N.A., Mortgage Electronic Systems, Inc. ("MERS"), and Landsafe, Inc.'s motion to dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1] (*MTD* [Doc. 25].) Defendants also request judicial notice of nine documents attached to their

---

[1] Defendant Ricardo Rodriguez joins in the motion. (*Rodriguez Joinder* [Doc. 26].)

motion. (*Defs.' RJN* [Doc. 25-2].) Plaintiff Nancy Tarsha opposes. (*Pl.'s Opp'n* [Doc. 27].) The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons below, the Court **GRANTS** Defendants' request for judicial notice, and **GRANTS** Defendants' motion.

## I.  BACKGROUND

In 2000, Plaintiff Nancy Tarsha leased a parcel of property on Cox Road in San Marcos, California. (*Second Amended Compl.* "SAC" [Doc. 24] 5.) The lease gave Tarsha an option to purchase the property at the end of a three-year term. (*Id.*) A horse trainer by trade, Tarsha used the Cox Road property as a personal residence and a boarding facility for her horses. (*Id.*) In April 2004, Tarsha obtained a mortgage loan to purchase the Cox Road property for $1,250,000. (*Id.*)

In early 2005, Tarsha was approached by Defendant Ricardo Rodriguez, a home loan consultant for Countrywide Home Loans, Inc. ("Countrywide"),[2] about refinancing her mortgage on the Cox Road property. (*Id.*) Following Rodriguez's solicitation, Tarsha subdivided the Cox Road property into two parcels: 390 Cox Road and 424 Cox Road. (*Id.* at 5-7) Over the next year, Tarsha entered into seven different transactions with Countrywide, all executed by Rodriguez (collectively, "transactions"):

1. On April 27, 2005, Tarsha refinanced the 424 Cox Road parcel with a $608,000 adjustable-rate loan from Countrywide. (*Id.* at 5-6; *SAC Exs. 1, 2*.)

2. On May 27, 2005, Tarsha obtained a $55,000 line of credit on the 390 Cox Road parcel through Countrywide. (SAC 8.)

3. On May 31, 2005, Tarsha refinanced the 390 Cox Road parcel with a $825,000 jumbo loan from Countrywide. (SAC 7; *SAC Ex. 3.*)

---

[2] Tarsha sues Bank of America as successor-in-interest to Countrywide. (SAC 18.)

4. On August 9, 2005, Tarsha refinanced the 424 Cox Road parcel, this time with a $610,000 loan from Countrywide. (*SAC* 9; *SAC Ex. 5*; *Defs.' RJN Ex. F*.) Countrywide's interest was secured by a deed of trust on the 424 Cox Road property, recorded August 16, 2005. (*Id.*)

5. On September 22, 2005, Tarsha obtained a $148,500 line of credit on the 424 Cox Road parcel through Countrywide. (*SAC* 11; *Defs.' RJN Ex. G*.) Countrywide's interest was again secured by a deed of trust on the property, recorded September 22, 2005. (*Id.*)

6. On December 22, 2005, Tarsha refinanced the 390 Cox Road parcel with a $910,000 adjustable-rate loan from Countrywide. (*SAC* 12; *Defs.' RJN Ex. A*.) Countrywide's interest was secured by a deed of trust on the property, recorded December 29, 2005. (*Id.*)

7. Finally, on January 30, 2006, Tarsha obtained a $188,500 line of credit on the 390 Cox Road parcel through Countrywide. (*SAC* 13; *Defs.' RJN Ex. B*.) Countrywide's interest was again secured by a deed of trust, recorded February 1, 2006. (*Id.*)

Tarsha maintains that each transaction above was procured by fraud on Rodriguez's part. (*See SAC* 5-12) For instance, Rodriguez repeatedly inflated Tarsha's income on loan and line-of-credit applications in order to secure approval. (*Id.*; *SAC Exs. 1, 8, 13*.) Rodriguez reported Tarsha's monthly income as $27,000, a figure that she contends she has never made. (*SAC* 7.) Tarsha also alleges that Rodriguez knowingly failed to document her extensive liabilities and inflated the value of her properties on certain loan applications. (*Id.*) Finally, Tarsha contends that Rodriguez consistently failed to provide her with disclosures required by federal law throughout the various transactions. (*Id.* at 5-12.)

Ultimately, Tarsha believes that Rodriguez induced her into repeated transactions for the sole purpose of generating fees for himself and other Countrywide affiliates, such as Landsafe. (*See, e.g., id.* at 7-8.) Although Rodriguez assured Tarsha that refinancing would help her stay in her home, each transaction only made her worse off: she incurred substantial pre-payment penalties with each refinance, she received no cash payouts as a result of the refinance and line-of-credit transactions, her total

indebtedness to Countrywide increased with each transaction, and the term of her indebtedness was only extended further into the future. (*Id.* at 5-12.)

In early 2008, Tarsha defaulted on her 424 Cox Road mortgage (transaction four above). (SAC 22.) Recontrust, the trustee identified on each deed of trust executed on behalf of Countrywide, recorded a notice of default and election to sell on May 27, 2008. (*Defs.' RJN Ex. H.*) On September 3, 2008, Recontrust recorded a notice of trustee's sale on the 424 Cox Road property. (*Defs.' RJN Ex. I.*) Soon after, Tarsha also defaulted on her 390 Cox Road mortgage (transaction six above). (*Defs.' RJN Ex. D.*) On February 20, 2009, Recontrust recorded a notice of default for that property as well. (*Id.*) Tarsha entered into Chapter 13 bankruptcy protection in August 2010, and was discharged on March 9, 2011. (SAC 15.) Tarsha filed her instant action in this Court on April 30, 2011. (*See Compl.* [Doc. 1].)

On February 10, 2012, Tarsha filed her FAC in the instant case. (*See FAC.*) Tarsha asserted ten causes of action: (1) fraud - intentional misrepresentation; (2) fraud - negligent misrepresentation; (3) breach of fiduciary duty; (4) violation of the Truth in Lending Act ("TILA"); (5) violation of the Real Estate Settlement Procedures Act ("RESPA"); (6) violation of the Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"); (7) violation of California's Unfair Competition Law ("UCL"); (8) breach of implied covenant of good faith and fair dealing; (9) wrongful foreclosure; and (10) quiet title. (*Id.*) Tarsha also sought equitable tolling on the applicable statutes of limitation and requests arbitration/mediation of her substantive claims. (*Id.* at 33-36, 39.) Defendants moved to dismiss each of Tarsha's claims. (*See Mot. Dismiss FAC* [Doc 18].)

On June 28, 2012, the Court granted in part and denied in part Defendants motion to dismiss the FAC, and granted Tarsha leave to amend. (*See Order* [Doc. 23].) On August 8, 2012, Tarsha filed her Second Amended Complaint asserting the same causes of action listed above. (*See SAC* [Doc. 24].) Defendants again move to dismiss each of Tarsha's claims. (*See MTD.*)

## II. LEGAL STANDARD

Courts must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

However, the courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). Instead, the allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. Id. Courts may also consider material

properly subject to judicial notice without converting the motion into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by* Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)).

### III. DISCUSSION

#### A. Defendants' Requests for Judicial Notice

Defendants seek judicial notice of nine documents, including recorded deeds of trust and notices of default or trustee's sale associated with the 390 Cox Road and 424 Cox Road properties. (*Defs.' RJN*.) Tarsha does not oppose. The Court may take notice of facts that are "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). Because each of Defendants' documents is a matter of public record, the Court takes notice of each of them. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

#### B. Defendants' Motion to Dismiss

Defendants have moved to dismiss each claim alleged in Tarsha's SAC. (*See MTD*.) Because Tarsha has again not opposed dismissal of her causes of action for wrongful foreclosure and quiet title, the Court **GRANTS** Defendants' motion to dismiss with respect to these claims **WITH PREJUDICE**. Tarsha's remaining claims are considered below.

##### 1. *Fraud & Negligent Misrepresentation*

In her first and second causes of action, Tarsha alleges that Rodriguez and Countrywide defrauded her by making false statements of material fact in each of the seven transactions discussed above. (SAC 23–29.) Specifically, Rodriguez falsely

inflated Tarsha's income to secure approval of each transaction, mislead Tarsha about the prepayment penalties and closing costs she suffered with each refinancing, and assured her that refinancing would keep her in her home. (*Id.* at 24-25, 27-28.) Defendants contend that Tarsha's fraud and negligence misrepresentation claims are time-barred and otherwise inadequately pled. (*MTD* 6-9.)

The statute of limitations on fraud and negligent misrepresentation claims under California law is three years. Cal. Code Civ. P. § 338(d); see Wilson v. Century 21 Great W. Realty, 15 Cal. App. 4th 298, 306 (1993) ("Negligent misrepresentation is a species of fraud."). Under California Code of Civil Procedure § 338(d), a cause of action for fraud or negligent misrepresentation does not accrue, however, until the aggrieved party *discovers* "the facts constituting the fraud or mistake." This so-called discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005); Sun 'n Sand, Inc. v. United Cal. Bank, 21 Cal. 3d 671, 350 (1978).

"In order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." Fox, 35 Cal. 4th at 808 (emphasis added); Taguinod v. World Sav. Bank, FSB, 755 F. Supp. 2d 1064, 1071 (C.D. Cal. 2010) (applying Fox to a federal complaint); see also Cervantes v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993) (explaining that equitable tolling may only be applied if plaintiff's complaint "adequately alleges facts showing the potential applicability of the equitable tolling doctrine"). In other words, the plaintiff must plead facts demonstrating that "he was not negligent in failing to make the discovery sooner." Sun 'n Sand, 21 Cal. 3d at 702. Although "resolution of the statute of limitations is normally a question of fact," a plaintiff's allegations may also be so deficient as to warrant dismissal at the pleading

stage. Fox, 35 Cal. 4th at 810; Sun n' Sand, 21 Cal. 3d at 702 (declining to apply discovery rule on the pleadings alone).

Each allegedly fraudulent transaction entered into between Tarsha and Countrywide occurred in 2005 or 2006, more than three years before she filed her original complaint in April 2011. (SAC 5-12; *Compl.*) Tarsha alleges that she did not discover Defendants' alleged wrongdoing until she received a Forensic Audit Report and the letter from Defendant on March 22, 2010 and May 14, 2010, respectively. (SAC ¶¶ 30, 67, 74, 83.) At this stage of the proceedings, this is sufficient to establish the time and manner of discovery, satisfying the first prong of the discovery rule. At issue here is the second prong of the discovery rule, namely, Tarsha's alleged inability to have made this discovery earlier. Defendants argue that Tarsha's SAC is nearly identical to her previously dismissed FAC and introduces no new allegations supporting her exercise of reasonable diligence to make the discovery sooner. (*MTD* 6.) Tarsha contests Defendants' characterization of her SAC, and cites various reasons why her discovery was delayed. (*Opp'n* [Doc. 27] 22-25.)

Tarsha first contends that her delay was reasonable because her loans were too complex for her to understand without assistance. (SAC ¶ 26 (arguing Tarsha attempted to "unravel the maze of loans" she had acquired but soon realized she "lacked the experience and ability to understand what went on with her loans).) Indeed, Tarsha argues that she never even considered looking into the validity and legality of the various transactions until the first notice of default was issued to her by Recontrust on September 3, 2008. (*Id.* at ¶ 25.) A reasonable person in Tarsha's situation would have inquired into the legitimacy of the transactions far before the issuance of the notice of default, given the sheer volume of transactions executed in only 10 months and the high value of the loans and credit lines. (SAC ¶¶ 1, 5-12; *Order* [Doc. 23] 8.) Moreover, a reasonable person would have inspected the loans' material terms upon singing, or at minimum, after receiving the loan documents. See Rey v. OneWest Bank,

FSB, 2013 WL 127839, * 5 (E.D. Cal. January 6, 2013)(Citing Tiqui v. First National Bank of Ariz., 2010 WL 1345381, *6 (S.D.Cal. April 5, 2010).

Tarsha next insists that her delay was reasonable because Defendants' actions delayed her discovery. (SAC at ¶ 26 (insisting that she continued her "discovery efforts" by calling Countrywide and Bank of America, but was further delayed by these Defendants giving her the "run-around); *Opp'n* at 23(citing *Tarsha Decl.* [Doc. 24-3])(arguing Tarsha had "no reason to believe that" her loan applications were inaccurate because she implicitly trusted Mr. Rodriguez and was continually reassured that Defendants were acting in her best interest).) First, the alleged "run-around" she received does not account for her delay in verifying the legality of the transactions from the time she entered into the transactions in 2005 and 2006 to September 3, 2008, when she received the notice of default. Second, a reasonable person would not be "compelled" to "implicitly trust" Mr. Rodriguez to "take care of everything." (SAC at ¶ 53.) This is especially true since a reasonable person would not trust a loan officer who claimed that he could process loan applications without the applicant's review or signature. (*Id.*)

Finally, Tarsha suggests that she was incapacitated and unable to pursue her investigation due to her depression. (*Id.* at ¶ 26; *Tarsha Decl.* [Doc. 24-3] ¶¶ 13, 14.) Because Tarsha alleges that this incapacitation occurred in 2009, it does not explain her delay in discovering the alleged fraud from the time she entered into the transactions in 2005 and 2006 until 2009. (*Id.* at ¶ 26.)

When viewed in the context of her SAC as a whole, these allegations do not support application of the discovery rule. Instead, the SAC demonstrates that Tarsha's failure to discover Defendants' alleged fraud within the three-year statute of limitations period was attributable to her own negligence. See Sun 'n Sand, 21 Cal.3d at 702.

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile. In light of the foregoing,

the Court **GRANTS** Defendants' motion to dismiss Tarsha's claims for fraud and negligent misrepresentation **WITH PREJUDICE**.

### 2. *Breach of Fiduciary Duty*

In her third cause of action, Tarsha alleges that Defendants breached their fiduciary duty to her by (1) inducing her into the various transactions for the sole purpose of generating fees, (2) failing to disclose the potential "adverse consequences" of participating in each loan, and (3) failing to modify her loans in compliance with the federal Making Home Affordable Refinance program. (SAC 30-31.) Defendants contend that Tarsha's third claim is time-barred as to the loan-origination allegations and fails to establish a fiduciary relationship as to her loan-modification allegations. (*MTD* 9-10.)

As its name implies, a cause of action for breach of fiduciary duty requires, at the very least, a fiduciary relationship. Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991). "A fiduciary or confidential relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter accepts or assumes to accept the confidence, he or she may not act so as to take advantage of the other's interest without that person's knowledge or consent." Id. at 1101-02. "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991); Oaks Mgmt. Corp. v. Sup. Ct., 145 Cal. App. 4th 453, 466 (1991).

Tarsha has still not demonstrated that her loan-origination claims are timely. Like fraud, the statute of limitations is three years. Hobbs v. Bateman Eichler, Hill Richards, Inc., 164 Cal. App. 3d 174, 201 (1985). Tarsha contends that her breach-of-fiduciary-duty claims sound in fraud and are therefore subject to the discovery rule. Even if this is true, Tarsha has not alleged sufficient facts to warrant application of that rule on the pleadings. See Part III.B.1. Nor does the more generous discovery rule arising out of fiduciary relationships cure her negligence in not discovering Defendants'

alleged frauds earlier. "Where a fiduciary relationship exists, facts which ordinarily require investigation may not incite suspicion." Hobbs, Cal. App. 3d at 201. But even then, "[a] person in a fiduciary relationship may relax, but not fall asleep." Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n, Inc., 171 Cal. App. 4th 1356, 1394-95 (2009). Tarsha still had a duty to investigate Rodriguez's misconduct when "she became aware of facts which would make a reasonably prudent person suspicious." Miller v. Bechtel Corp., 33 Cal. 3d 868, 875 (1983). At the very least, the fact that Mr. Rodriguez claimed that it was unnecessary for Tarsha to review or sign her applications should have warned Tarsha that something was very suspicious about her loans with Countrywide. (SAC ¶ 53.) Moreover, a reasonable person would have inspected the material terms of the loans upon signing, or shortly thereafter. See Part III.B.1.

Tarsha also argues that Defendants breached their fiduciary duty because they failed to comply with the Making Home Affordable Refinance program ("HAMP") by failing to present her with viable options to modify her loans. (SAC ¶ 91.) Defendants move to dismiss these "failure to modify allegations" because Tarsha cannot and does not "allege that Defendants owed her a duty, fiduciary or otherwise, to grant her a loan modification." (MTD 10 (citing SAC ¶ 91).) The Court agrees with Defendants.

"Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives." Vasquez v. Wells Fargo Home Mortg., 2012 WL 985308 * 3 (S.D. Cal. March 22, 2012). "Participating servicers are required to consider all loans eligible under the program; however, they are not required to modify mortgages." Id. (citing Escobedo v. Countrywide Home Loans, Inc., 2009 WL 4981618, at *1 (S.D. Cal. Dec. 15, 2009). Defendants do not contest that they entered into the HAMP agreement.

"Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP." Cleveland v. Aurora Loan Serv., LLC, et al., 2011 WL 2020565, at *4 (N.D.Cal. May 24, 2011) (collecting cases); see also Carlos v. Bank of Amer. Home

Loans, et al., 2011 WL 166343, at * 1 (C.D.Cal. Jan.13, 2011) ("[I]t is well established that there is no private cause of action under HAMP") (quoting Singh v. Wells Fargo Bank, 2011 WL 66167 at *7 (E.D.Cal.Jan.7, 2011)) (quotation marks omitted)). Because Tarsha has no private right of action against defendants under HAMP, her claim predicated on allegations that Defendants violated HAMP must be dismissed with prejudice.

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile. In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss with respect to Tarsha's loan-origination claims and her failure-to-modify claims **WITH PREJUDICE**.

### 3. *TILA Violations*

In her fourth cause of action, Tarsha alleges that Defendants failed to provide various disclosures required by TILA. (SAC 31-34.) Tarsha seeks monetary damages based on these claims. (*Id.* at ¶ 103.) These claims are time-barred.

Actions for TILA damages are subject to a one-year statute of limitations that begins to run on "the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The limitations period of a TILA damages claim may be tolled until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. King v. California, 784 F.2d 910, 915 (9th Cir. 1986).

A reasonably diligent person would have read the loans' material terms upon signing, or, at a minimum, after receiving the loan documents. See Rey, * 5. Thus, it was not reasonable for Tarsha to wait until September 3, 2008 when she received the notice of default before first examining the loan papers and material loan terms. Id.; See Hubbard v. Fid.Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996). Therefore, Tarsha cannot claim that she was reasonably diligent in discovering the alleged TILA violations if she discovered them in 2010, five years after executing the transactions. (*Id.* at ¶ 103.) Moreover, to the extent that Tarsha attempts to toll the statute by way of her

1  repeated delayed discovery allegations, they fail as set forth above.  See Part III.B.1.

2  Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile.  In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss Tarsha's TILA claims **WITH PREJUDICE.**

### 4. *RESPA Violations*

In her fifth cause of action, Tarsha alleges that Defendants violated RESPA by (1) not providing her with a loan servicing statement (12 U.S.C. § 2605(a)), (2) overcharging her for "appraisal, closing costs, and other hidden fees" (12 U.S.C. § 2607), (3) and failing to properly respond to her Qualified Written Requests ("QWR") (12 U.S.C. § 2605(e)).  (SAC 36-37.)  Again, Defendants move to dismiss Tarsha's claim as untimely and inadequately pled.  (*MTD* 13-15.)

Tarsha's RESPA claims under § 2605 are subject to a three-year statute of limitations that begins to run on "the date of the occurrence of the violation."  12 U.S.C. § 2614.  Tarsha's § 2607 claim for "unearned fees" is subject to a one-year statute of limitations.  12 U.S.C. § 2614.  Like TILA damages claims, RESPA claims may be equitable tolled.  Blaylock v. First Am. Title Inc. Co., 504 F. Supp. 2d 1091, 1106-08 (W.D. Wash. 2007).  Tarsha's claims for failure to provide a servicing statement and overcharging arise from the completion of her transactions with Countrywide, more than four years before she filed her original complaint.  (SAC 36-37.)  Tarsha essentially argues that the statute of limitations should be tolled because Defendants concealed these violations by withholding required disclosures.  (SAC ¶ 107.)  But the violation itself cannot serve to toll the statute of limitations; otherwise, the statute of limitations is meaningless.  See Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) (finding the same in the TILA context).  This Court already explained that Tarsha must allege some "fraudulent conduct beyond the nondisclosure itself" to justify equitable tolling.  Id.  However, Tarsha has essentially realleged her concealment theory here.  (SAC ¶ 107.)  To the extent that she argues

that her delay was caused by her depression and not concealment, this Court finds her equitable tolling argument unpersuasive as detailed above.  See Part III.B.1.  Because general allegations of fraudulent concealment do not satisfy this pleading requirement, Tarsha's servicing-statement and overcharging claims are time-barred as pled.

Tarsha's QWR claim alleges that Defendants did not properly respond to her purported QWR by failing to provide the requested information, failing to make corrections to the borrower's account, and failing to provide written notification of correction.  (SAC ¶ 111.)  Defendants argue that this claim must be dismissed because Plaintiff's purported QWR is not compliant with statutory requirements.  (MTD 13-14.)  Defendants also move to dismiss this claim on the basis that their response to the purported QWR met statutory requirements.  (Id. at 14.)  The Court agrees with Defendants.

In order for correspondence to constitute a QWR, it must include "a statement of the reasons for the belief . . . that the account is in error."  12 U.S.C. §2605(e)(1)(B)(ii).  Tarsha's purported QWR does not meet this threshold requirement.  Instead, the letter simply informs defendants that she disputes the amount owed in her monthly billing statement without providing any detail as to the reasons she believes the account is in error.  (Purported QWR [Doc. 24-2] Ex. P15 p. 1.)  Thus, Defendants were not required to respond to the purported correspondence, effectively insulating them from liability for the claimed violation of the statute.  Moreover, Defendants argue that they provided a detailed, timely response that complied with the statute and expressly contradicted her allegations of non-compliance.  (See MTD 14; Response to Purported QWR [Doc. 24-2] Ex. P19.)  Tarsha does not refute that her QWR was improper or that the Defendants response was improper anywhere in her Opposition.  (See Opp'n 36-39.)

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile.  In addition, Tarsha has failed to refute Defendants' claims regarding the validity of her purported QWR. In

light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss Tarsha's RESPA claims **WITH PREJUDICE.**

### 5. *FDCPA & Rosenthal Act Violations*

In her sixth cause of action, Tarsha alleges that Defendants engaged in unlawful debt collection activities in violation of the FDCPA and Rosenthal Act. (*SAC* 38-41). Defendants move to dismiss Tarsha's claim as inadequately pled because Defendants are not "debt collectors" and because Tarsha fails to allege any improper debt collection activity. (*MTD* 15-17.) The Court agrees with Defendants that they are not "debt collectors" under the Rosenthal Act and the FDCPA.

The FDCPA does not govern efforts by creditors collecting their own debts. 15 U.S.C. § 1692a(6). Moreover, creditors, mortgagors and mortgage servicing companies are not "debt collectors" and are exempt from liability under the Act. Caballero v. Ocwen Loan Servicing, 2009 WL 1528128, at *1 (N.D. Cal. May 29, 2009). Because Defendants are a "loan servicer," no claim can be stated against them under the FDCPA.

Like the FDCPA, the RFDCPA applies only to debt collectors. Izenberg v. ETS Services, LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. December 8, 2008). However, the definition of "debt collector" found in the state statute is broader than the FDCPA's definition. Id. The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." See Cal. Civ. Code. § 1788.2(c). However, "[t]he law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the [Rosenthal Act]." Sipe v. Countrywide Bank, 690 F.Supp.2d 1141, 1151 (E.D. Cal. 2010)(citations omitted); Izenberg, 589 F.Supp. 2d at 1199 ("foreclosure does not constitute debt collection under the Rosenthal Act"). Thus, no claim can be stated against Defendants under the Rosenthal Act.

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile. In light of the foregoing,

the Court **GRANTS** Defendants' motion to dismiss Tarsha's FDCPA and Rosenthal Act claims **WITH PREJUDICE.**

**6.** *California UCL Violations*

In her seventh cause of action, Tarsha alleges that Defendants violated California's unfair competition law by engaging in the wrongful acts otherwise pled in her previously discussed causes of action. (SAC 41-43.) California's UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because § 17200 is written in the disjunctive, it establishes three varieties of unfair competition: acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). "Violation of almost any federal, state, or local law may serve as the basis for a [UCL] claim." Plascencia v. Lending 1st Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing Saunders v. Sup. Ct., 27 Cal. App. 4th 832, 838-39 (1994)). Defendants contend that Tarsha's UCL claim is time-barred, inadequately pled, and fails to demonstrate an "injury in fact." (*MTD* 17-19.) The Court agrees that the claim is time-barred and inadequately plead.

An action for unfair competition under Business and Professions Code § 17200 shall be commenced within four years after the cause of action accrued. Bus. & Prof. Code, § 17208. There is disagreement whether the "discovery rule" applies to unfair competition actions. Compare Snapp & Associates Ins. Services, Inc. V. Malcome Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 891 (2002)(holding that the discovery rule does not apply to unfair competition actions), with Aryeh v. Canon Business Solutions, Inc., 55 Cal. 4th 1185, 1194-95 (Cal. 2013)(finding that the discovery rule applies to UCL claims to the same extent it applies to any other statutory claim and explaining that the application of the rule depends not on the cause of action but the nature of the right sued upon).

If the discovery rule does apply, Tarsha's attempts to toll the statute of limitations fail as set forth above. See Part III.B.1. If the discovery rule does not apply, then "the statute begins to run ... irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine." Stutz Motor Car of America v. Reebok Intern., Ltd., 909 F.Supp. 1353, 1363 (C.D.Cal. 1995). As explained below, Tarsha cannot invoke the equitable tolling doctrine. See Part III.B.8. In either case, Tarsha's claims that are otherwise time-barred are time-barred under the UCL. Tarsha's claims which are not time-barred but are otherwise improper– alleged HAMP violations, RESPA claims in connection with the purported QWR, FDCPA claims, Rosenthal Act Claims–cannot serve as a basis for a UCL claim because they do not adequately allege any "unlawful," "unfair," or "fraudulent" business practices.

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile. In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss Tarsha's UCL claim **WITH PREJUDICE.**

**7.** *Breach of Good Faith*

In her eighth cause of action, Tarsha alleges that Defendants have breached the implied covenant of good faith and fair dealing by (1) failing to provide her with proper disclosures and misrepresenting her financial position in connection with the transactions, (2) self dealing to unjustly enrich themselves, (3) initiating foreclosure proceedings on her property and (4) failing to provide proper notices of that foreclosure. (*SAC* 44-45.) Defendants argue that Tarsha's eighth cause of action should be dismissed because it is time-barred and fails to allege a breach of contract. (*MTD* 19.)

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do

to accomplish its purpose." 1 WITKIN, SUMMARY 10TH CONTRACTS , § 798, p. 892 (2005).  A breach of good faith claim sounds in contract, and thus has a four-year statute of limitations. <u>Frazier v. Metroplitan Life Ins. Co.</u>, 169 Cal. App. 3d 90, 102 (1985).

The alleged breaches of good faith surrounding the origination of the loans occurred more than four years before Tarsha filed her claim.  Because these claims fall outside of the statute of limitations, and because Tarsha is not entitled to the discovery rule, these claims are time barred.  <u>See</u> Part III.B.1.

The alleged breaches of good faith regarding foreclosure fall within the statute of limitations, because they allegedly occurred in 2008.  However, Tarsha fails to plead any wrongdoing on Defendants' part in connection with these claims.  Tarsha does not dispute that she defaulted on her loan obligations, thereby empowering Defendants to foreclose.  (*See FAC* ¶140.)  Therefore, Tarsha has not adequately plead that the foreclosure was wrongful.

Tarsha'a allegations that Defendants failed to provide her with proper notice are insufficient because actual receipt by the trustor of a notice of default is not required. (SAC ¶140; <u>Knapp v. Doherty</u>, 123 Cal. App. 4th 76, 88 (2004) ("The trustor need not receive actual notice of the trustee's sale so long as notice is provided to the trustor that is in compliance with the statute.").)  The judicially noticeable documents in this matter show that Recontrust, the trustee identified on each of Tarsha's deeds of trust, recorded notices mandated by California's non-judicial foreclosure system. Tarsha does not explain why these are defective or provide any additional factual allegations to support her claim. (*See* SAC 32-33) (incorporating allegations in her first seven claims, but not from her wrongful foreclosure or quiet title causes of action.)

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile.  In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss Tarsha's breach of good faith claim **WITH PREJUDICE.**

### 8. *Equitable Tolling*

Tarsha's ninth cause of action again seeks equitable tolling of "all causes of action alleged in [her] Second Amended Complaint." (SAC ¶ 142.)  Defendant argues that Tarsha provides no justification for equitable tolling of her claims. (*MTD* 20.)  The Court agrees.

"Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" O'Donnell v. Vencor Inc., 466 F.3d 1104, 1112 (9th Cir. 2006) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

First, Tarsha makes no allegations that she actively pursued her judicial remedies by filing a defective pleading during the relevant statutory period. (*See* SAC 142-148.)  Second, Tarsha fails to allege that she had been induced into allowing the filing deadline to pass. (*See id.*)  Third, to the extent that Tarsha contends that she was unable to detect Defendants' wrongdoing due to Defendants' "fraudulent concealment," the Court is unpersuaded. See Part III.B.1.  Accordingly, the equitable tolling doctrine does not apply to save any of Tarsha's otherwise time-barred causes of action.

Given the fact that Tarsha had a chance to cure the deficient pleadings here and was unable to do so, it appears leave to amend would be futile.  In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss Tarsha's equitable tolling claims **WITH PREJUDICE.**

//
//
//
//
//
//

## IV.   CONCLUSION

For these reasons, the Court **GRANTS** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

DATED: March 29, 2013

_____
Hon. Thomas J. Whelan
United States District Judge